UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:15-cv-60248-KMM

J.A.M.,

    Plaintiff,

v.

NOVA SOUTHEASTERN
UNIVERSITY, INC.,

    Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

THIS CAUSE is before the Court on Defendant Nova Southeastern University, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 15). The matter has been fully briefed and is ripe for review. For the reasons explained below, the Motion to Dismiss is GRANTED.

**I.    BACKGROUND**

This is an action brought under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act (the "RA"), 29 U.S.C. § 794 *et seq.*, by J.A.M., a former medical student, against the Nova Southeastern University College of Osteopathic Medicine ("Nova"), alleging disparate treatment and a failure to accommodate.

J.A.M. enrolled in the fall of 2010 at Nova's College of Osteopathic Medicine. Am. Compl. ¶ 12. He successfully completed the first semester. *Id.* During his second semester, however, J.A.M. experienced a recurrence of his major depressive disorder, resulting in a week-long binge-drinking episode, for which he was hospitalized for psychiatric stabilization. *Id.* ¶¶ 13, 15. After his release from the hospital, J.A.M. met with school officials, who granted him a

retroactive medical leave of absence. *Id.* J.A.M. returned to school and successfully resumed his studies. *Id.* ¶ 16.

Upon his return, J.A.M. was referred to the school's Student Assistance Program. *Id.* ¶ 17. The program classified J.A.M. as a student with a drinking problem, despite his documented history of mood and anxiety disorder. *Id.* ¶ 18. As such, J.A.M. had to sign an agreement calling for random drug tests and abstinence from alcohol (the "Student Assistance Agreement"). *Id.* J.A.M. was eventually released to return to class by a Nova-approved psychiatrist. *Id.* ¶¶ 19–20.

During the first semester of his second year, J.A.M. experienced a recurrence of his major depressive disorder. *Id.* ¶ 21. That episode caused J.A.M. to fail 14 credits, binge drink, and once again end up in the hospital. *Id.*

J.A.M. reached out to school officials after leaving the hospital. *Id.* ¶ 24. Given the amount of credits he had failed that semester, Elaine Wallace, D.O., Associate Dean for Student Affairs, informed J.A.M. that he would have to take a leave of absence and obtain approval from the school's Student Progress Committee to resume his studies. *Id.* J.A.M. took a seven-month leave of absence, re-enrolled in the fall of 2012, and passed all of the classes he had previously failed. *Id.* ¶ 25.

During that semester, however, J.A.M. suffered two relapses. *Id.* He was hospitalized twice in November 2012 for psychiatric stabilization and diagnosed with major depressive disorder, marked by suicidal ideation. *Id.* J.A.M. checked himself into a dual-diagnoses treatment program. *Id.* ¶ 28.

He returned to classes for the spring 2013 semester. *Id.* Although J.A.M. passed his first block classes, he relapsed again towards the end of the semester, leading to yet another

hospitalization. *Id.* ¶ 29. Following his discharge from the hospital, J.A.M. presented Nova with a release to return to school, and a schedule of make-up exams was arranged. *Id.* ¶ 30.

The next morning, however, J.A.M. was summoned to meet Dr. Wallace, who asked him about his most recent hospitalization. *Id.* ¶ 31. When Dr. Wallace learned that J.A.M. had been hospitalized for alcohol-related psychiatric stabilization, she told him that he would not be able to take any of his exams because he had breached the Student Assistance Agreement. *Id.* ¶ 32. Rather, she explained, he would need to take another medical leave of absence and again appear before the Student Progress Committee before resuming his studies. *Id.*

In May 2013, J.A.M. re-admitted himself into the dual-diagnoses treatment. *Id.* ¶ 33. After a two-month stay at the program's transitional living facility for intensive outpatient therapy, and another one-month stay for normal outpatient therapy, J.A.M.'s psychotherapist and psychiatrist approved his return to school. *Id.* ¶¶ 33–34.

J.A.M. completed the dual-diagnosis program and reached out to Nova at the end of the year about re-enrolling. *Id.* At Nova's instruction, J.A.M. was evaluated by Raymond Ownby, M.D., Chair of the Department of Psychiatry and Behavioral Health. *Id.* ¶ 35. Dr. Ownby cleared J.A.M. to return to medical school, with monitoring. *Id.* ¶ 36.

Still, the school required J.A.M. to appear before the Student Progress Committee. *Id.* ¶ 37. Members of the committee asked J.A.M. about the circumstances of his relapses, including whether he had breached the Student Assistance Program agreement by consuming alcohol. *Id.* In response, J.A.M. told the committee that he had never been to class intoxicated, had never seen a patient while intoxicated, and had never been in any sort of conflict with faculty, staff, or other students. *Id.* ¶ 38.

In the end, the Student Progress Committee voted to dismiss J.A.M. from the medical school for breach of the Student Assistance Agreement, which was accepted by the dean of the medical college and affirmed through the internal appeals process. *Id.* ¶ 39.

J.A.M. rejects this reason for his dismissal as pretextual and sues Nova for violation of his federal disability rights. The two-count Amended Complaint (ECF No. 11) asserts claims under the ADA and RA for disparate treatment and failure to provide a reasonable accommodation, alleging the school unlawfully dismissed him on account of his disability. *Id.* He seeks injunctive relief, damages, and attorney's fees and costs. *Id.*

## II.     LEGAL STANDARD

On a motion to dismiss, a court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir. 1988). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation omitted). A complaint must also contain enough facts to indicate the presence of the required elements. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). However, "[a] pleading that offers 'a formulaic recitation of elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations,

unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

### III. DISCUSSION

Nova moves to dismiss this action under Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim under either the ADA or RA. The school argues that J.A.M. fails to allege enough facts, which, if true, would establish that (1) he is qualified for participation in the College of Medicine, despite his disability; (2) Nova discriminated against him because of his disability; and (3) Nova failed to provide a reasonable accommodation. After careful consideration, the Court finds that J.A.M. has failed to state causes of action for disparate treatment and failure to accommodate under both statutes.

#### A. Legal Framework

Both the ADA and the RA prohibit discrimination on the basis of disability by an institution of higher education. Title III of the ADA "forbid[s] the denial of public services and public accommodations, respectively, to otherwise qualified individuals by reason of their disability." 42 U.S.C. § 12182(a). Section 504 of the RA, likewise, provides that "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). A defendant may be liable under either the ADA or RA for "disparate treatment,"[1] or, alternatively, for failure to provide a reasonable accommodation to a disabled person. *Palm*

---

[1] "'Disparate treatment' . . . is the most easily understood type of discrimination. The defendant simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977).

*Partners, LLC v. City of Oakland Park,* No. 1:14-CV-21242-KMM, 2015 WL 1968799, at *6 (S.D. Fla. Apr. 30, 2015). Because both statutes generally impose the same legal requirements, the Court will discuss the ADA and RA claims together, relying on cases construing those statutes interchangeably, unless a distinction is relevant. *Id.*; *see also Wilbourne v. Forsyth Cnty. Sch. Dist.*, 306 Fed. App'x 473, 476 (11th Cir. 2009) (observing that disability claims under the ADA and RA are subject to a similar legal analysis).

### B. Intentional Discrimination Claims

J.A.M.'s disparate treatment claims cannot survive dismissal. To state a discrimination claim under either the ADA or RA, it must be shown that the plaintiff is (1) disabled, (2) "otherwise qualified" for participation in the program, and (3) being subjected to unlawful discrimination because of his or her disability. *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000). Here the parties do not dispute whether J.A.M. is disabled under federal law. They dispute, rather, whether he is an "otherwise qualified" individual and the subject of unlawful discrimination due to his disability.

The Court, however, need not address whether J.A.M. is "otherwise qualified," for even if he were, the Amended Complaint fails to allege enough facts to establish that he was dismissed because of his disability. A plaintiff alleging disparate treatment under the ADA must show that the defendant intended to discriminate or was improperly motivated in making the discriminatory decision, while a plaintiff claiming disparate treatment under the RA must show that the defendant discriminated "*solely* by reason" of his or her disability. *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008). Among the factors a court may consider in determining whether disparate treatment is present are (1) the discriminatory effect of the decision, (2) the historical background of the decision, (3) the sequence of events leading up

6

to the challenged decision, (4) any departure from normal procedural or substantive criteria, and (5) relevant legislative or administrative history. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267–68 (1977).

In this case, J.A.M. fails to offer facts showing that his disability was a motivating factor in the school's decision to dismiss him, or that the school dismissed him solely by reason of his disability. He does not point to any other instance where Nova disciplined a disabled person under suspect circumstances, let alone a history of discriminatory decisions by the school. He does not cite to any deviation by school officials from Nova's normal procedural or substantive disciplinary criteria. Nor does he allege any contemporary statements by members of the Student Progress Committee, which recommended his dismissal, revealing a discriminatory animus.

To the contrary, the Amended Complaint alleges facts that, if true, show that the decision to dismiss J.A.M. was based on non-discriminatory reasons. J.A.M. was required to sign the Student Assistance Agreement calling for abstinence from alcohol. So, when Dr. Wallace learned that J.A.M. had been hospitalized for alcohol-related psychiatric stabilization, she prohibited him from taking his exams, instead making him take another medical leave of absence and appear before the Student Progress Committee before resuming his studies. Tellingly, when J.A.M. appeared before the Student Progress Committee, the focus of the inquiry was on J.A.M.'s breach of the Student Assistance Agreement and consumption of alcohol, not his mental disorders. These alleged facts suggest that J.A.M. was dismissed for breach of the Student Assistance Agreement, not his disability.

Accordingly, because the Amended Complaint does not contain sufficient factual matter, which, if accepted as true, plausibly shows that J.A.M. was dismissed because of his disability, the ADA and RA disparate treatment claims must be dismissed.

**C. Failure to Accommodate Claims**

J.A.M.'s failure to accommodate claims, like his disparate treatment claims, also cannot survive dismissal. Even in the absence of disparate treatment, a defendant will be liable for failing to reasonably accommodate a disabled person under, as a failure to accommodate is an independent basis for liability under the ADA and RA. *Meyer v. Sec'y, U.S. Dep't of Health & Human Servs.*, 592 F. App'x 786, 791 (11th Cir. 2014). To state a failure to accommodate claim, it must be shown that the plaintiff (1) is disabled, (2) is an "otherwise qualified" individual, and (3) was discriminated against by way of the defendant's failure to provide a reasonable accommodation. *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001). As with J.A.M.'s disparate treatment claims, because the parties do not dispute whether he is disabled, the failure to accommodate claims turn on whether he is an "otherwise qualified" individual and whether Nova failed to provide a reasonable accommodation.

In the context of postsecondary education, a "qualified person" with a disability is one "who meets the academic and technical standards requisite to admission or participation in the recipient's education program or activity," in spite of the disabled person's handicap.[2] 34 C.F.R. § 104.3(l)(3); *see also Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 406 (1979). Thus, if a plaintiff is unable to meet a program's academic requirements, even with an accommodation, the plaintiff

---

[2] Although this definition is found in a regulation promulgated under the RA, the ADA's and RA's accommodation requirements impose coextensive obligations, and courts often use the standards interchangeably. *See, e.g., Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 816 n.26 (9th Cir. 1999).

is, by definition, not a qualified individual and, therefore, not covered under the ADA or RA. *Id.* (quotation omitted).

Based on the allegations set forth in the Amended Complaint, J.A.M. is unqualified to participate in Nova's medical program. J.A.M. has been unable to complete a single semester of medical school from 2011 to 2014 without suffering a relapse of his major depressive disorder, failing classes, abusing alcohol, or taking a leave of absence. Even after providing him with two medical leaves of absence to address his condition, J.A.M. again relapsed, failing to meet the program's requirements. Ultimately, school officials found J.A.M. in breach of the Student Assistance Agreement. J.A.M.'s inability to meet the requirements of Nova's medical program, with or without a reasonable accommodation, renders him unqualified under the law.

Nova, moreover, is not required to excuse past misconduct, even if the misconduct is linked to the student's underlying disorder. An institution is under no obligation to "lower or to effect substantial modifications of standards to accommodate a handicapped person," and "[t]he Supreme Court has repeatedly admonished courts to respect the academic judgment of university faculties." *Doe v. Vanderbilt Univ.*, 132 F.3d 32 (6th Cir. 1997); s*ee also Tylicki v. St. Onge*, 297 F. App'x 65 (2d Cir. 2008) (holding that the ADA and RA permit college to discipline student, even if student's misconduct was the result of disability); *Ascani v. Hofstra Univ.*, 173 F.3d 843 (2d Cir. 1999) (affirming dismissal of student who threatened professor, even if the behavior was caused by her mental impairment); *Halpern v. Wake Forest Univ. Health Scis.*, 669 F. 3d 454, 465 (4th Cir. 2012) (noting that while "a school, if informed that a student has a disability with behavioral manifestations, may be obligated to make accommodations to help the student avoid engaging in misconduct, . . . the law does not require the school to ignore misconduct that has occurred because the student subsequently asserts it was the result of a

disability"); *Childress v. Clement*, 5 F. Supp. 2d 384 (E.D. Va. 1998) (upholding dismissal of graduate student for plagiarism, despite contention that his learning disability prevented him from mastering skill). Through this action J.A.M. essentially asks the school to excuse his past misconduct. Federal law, however, makes no such demand.

Accordingly, because the Amended Complaint fails to allege facts showing that J.A.M. is qualified to participate in Nova's medical program, in spite of his disability, the ADA and RA failure to accommodate claims also must be dismissed.

**IV.    CONCLUSION**

For the foregoing reasons, Defendant Nova Southeastern University, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 15) is GRANTED. The Amended Complaint is DISMISSED.

The Clerk of Court is instructed to CLOSE THIS CASE. All pending motions, if any, are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this  12th   day of August, 2015.

*/s/ K.M. Moore*
K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

cc:    All counsel of record